■ PASTABAR CAFÉ CORPORATION, Plaintiff, v 343 EAST 8TH STREET ASSOCIATES, LLC, Respondent, and NATIONAL SPECIALTY INSURANCE CO., INC., Appellant, et al., Defendant. [47 NYS3d 305]—

Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered July 20, 2016, which denied defendant National Specialty Insurance Co., Inc.'s (National Speciality) motion for summary judgment dismissing the contract cause of action against it, unanimously affirmed, without costs.

Plaintiff Pastabar Café Corporation was damaged when Hurricane Sandy hit New York City in October 2012. In compliance with its obligations under its lease, Pastabar had bought a commercial package policy containing commercial general liability and property damage coverage from defendant National Specialty.

The policy, which was in force on October 29, 2012, provides that the insurer "will not pay for loss or damage caused directly or indirectly by," among other things, water. The policy also contained a "Water Exclusion Endorsement" that defined "water" as "[f]lood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge)." The policy also provided that if any of the above "result[ed] in fire, explosion or sprinkler leakage, [National Specialty] will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss)."

After Hurricane Sandy struck, Pastabar claimed the premises lost electricity for an extended period of time, and as a result, the business was damaged by the spoilage of perishable food. Power finally returned, but according to the complaint, the landlord's failure to repair the electrical system at the premises caused Pastabar's refrigeration system to short out, requiring a complete replacement.

National Specialty's third-party claims agent investigated the conditions at the premises and, on National Specialty's behalf, disclaimed coverage under the policy on the ground that the water exclusion barred Pastabar's claims. Pastabar commenced this action, seeking a declaration that the damage sustained as a result of Hurricane Sandy was caused by a covered loss under the National Specialty policy, and also seeking specific performance under the policy.

At his deposition, Pastabar's manager testified that three refrigerators and an ice machine were damaged by either water damage or electric damage that occurred when Con Ed turned the electricity back on about a month after the hurricane "without checking the clocks or the watches downstairs," thus "caus[ing] the melting of wires and burning of . . . most of the

equipment." Specifically, the manager testified, "[w]hen the electric turned on, it must have caused some type of spark and it caused the damage" to the equipment.

National Specialty's moved for summary judgment dismissing the complaint. On its motion, National Specialty's submitted a sworn expert affidavit attesting that the water level at the exterior of the premises was between 2.9 and 3.9 feet above the roadway surface, and that the street flooding was due to the overflow of the East River and was a direct cause of the water entry into the building. The engineering report attached to the affidavit included findings and photographs showing flood inundation at the location. The report, however, was unsigned, and there were no findings that attributed Pastabar's damages to flood inundation or any other cause of loss.

To begin, the motion court properly considered the report from National Specialty's expert. Although the report was unsigned, it was incorporated into the expert's sworn affidavit, thus rendering it appropriate for consideration on National Specialty's motion (*see Townes v Harlem Group, Inc.*, 82 AD3d 583 [1st Dept 2011]).

Nonetheless, National Specialty failed to establish prima facie that all of Pastabar's claimed losses were caused by flood waters resulting from Hurricane Sandy on October 29, 2012, and were thus within the insurance policy exclusion for water and floods. Based on photographs that Pastabar received from an unidentified neighbor, National Specialty's expert made a finding concerning the exterior water level at the premises on October 29, 2012. However, the expert never inspected the site or the electrical wiring. Therefore, the expert could not refute testimony by Pastabar's manager that Pastabar suffered additional damage a month after the storm, when electricity was restored and caused "the melting of wires and burning of . . . most of the equipment." Thus, the expert's report never rose above the level of speculation (*see Oboler v City of New York*, 31 AD3d 308, 308-309 [1st Dept 2006], *affd* 8 NY3d 888 [2007]).

In view of our decision, we need not evaluate the sufficiency of Pastabar's showing in opposition (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Concur—Friedman, J.P., Richter, Saxe, Moskowitz and Kapnick, JJ.